**KAZEROUNI LAW GROUP, APC**
Gustavo Ponce, Esq. (SBN: 15084)
gustavo@kazlg.com
Mona Amini, Esq. (SBN: 15381)
mona@kazlg.com
6940 S. Cimarron Road, Suite 210
Las Vegas, Nevada 89113
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Erin Robertson

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ERIN ROBERTSON on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>PLAIN-ENGLISH MEDIA, LLC d/b/a PLAIN-ENGLISH HEALTH CARE d/b/a STRATEGIC HEALTH CARE MARKETING; and USHEALTH ADVISORS, LLC d/b/a USHEALTH GROUP,<br><br>          Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C §§ 227, ET SEQ. (TCPA)**<br><br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

///

///

///

Plaintiff ERIN ROBERTSON ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants PLAIN-ENGLISH MEDIA, LLC d/b/a PLAIN-ENGLISH HEALTH CARE d/b/a STRATEGIC HEALTH CARE MARKETING ("Plain-English"); and USHEALTH ADVISORS, LLC d/b/a USHEALTH GROUP ("USHealth"), (together *both* referred to as "Defendant"), in negligently and/or knowingly transmitting unsolicited SMS or MMS text messages, *en masse*, to Plaintiff's cellular telephone and to the cellular telephones of numerous other individuals across the country, without prior express consent, despite their telephone numbers being registered with the National Do Not Call Registry in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA").

## **INTRODUCTION**

1. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and all other available legal or equitable remedies, challenging Defendant's unlawful actions in negligently and/or willfully contacting Plaintiff and the members of the proposed Class (as defined below) (collectively, the "Class Members") on their cellular telephones, thereby invading Plaintiff's privacy.

2. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

3. In 2015, the Federal Communications Commission noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

4. Text messages are calls and are subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

5. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant' texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

6. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

7. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>, the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.
- Prohibit solicitations to residences that use an artificial voice or a recording.
- Prohibit any call made using an artificial or prerecorded voice to a wireless device or cellular telephone.

CLASS ACTION COMPLAINT

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.
- Prohibit autodialed calls that engage two or more lines of a multi-line business.
- Prohibit unsolicited advertising faxes.
- Prohibit certain calls to members of the National Do Not Call Registry.

8.      Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

9.      With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

10.      The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous

consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA."

11. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

12. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13; see also, *Mims*, 132 S. Ct. at 744.

13. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

14.    The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

15.    Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

16.    While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

17.    Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

18.    Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

19.    This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

20.    Personal jurisdiction is established because Defendant conducts business in the State of Nevada. At all times relevant herein, Defendant conducted business in the State of Nevada, and within this judicial district.

21.    Personal jurisdiction and venue are proper in the District of Nevada pursuant to 28 U.S.C. § 1391 for the following reasons: (1) the conduct complained of

herein occurred within this judicial district; and (2) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on her cellular telephone, while Plaintiff resided in Reno, Nevada which is within this judicial district.

22. Venue is proper in the United States District Court for the District of Nevada pursuant to 18 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

a) Defendant is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

b) Defendant does substantial business within this district;

c) Defendant is subject to personal jurisdiction in this judicial district because Defendant has availed itself of the laws and markets within this district; and,

d) the harm to Plaintiff originated from within this judicial district.

## **PARTIES**

23. Plaintiff is, and at all times mentioned herein was, a resident of the State of Nevada, County of Washoe. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

24. Defendant Plain-English is a corporation formed under the laws of the State of California, with its principal address located in Alameda, California. Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39).

25. Defendant USHealth is a corporation formed under the laws of the State of Texas, with its principal address located in Fort Worth, Texas. Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39).

26. At all times relevant, Defendant conducted business in the State of Nevada

and within this judicial district.

**FACTUAL ALLEGATIONS**

27. Defendant Plain-English conducts business through divisions Plain-English Health Care and Strategic Health Care Marketing.

28. Defendant Plain-English is an independent publishing company that provides practical guidance to help readers in their professional roles[1].

29. Through Defendant Plain-English's divisions, it "serves marketers, strategists, communicators, digital specialists, planners, C-suite executives, and business development professionals at hospitals, health systems, physician groups, and other healthcare organizations"[2].

30. Defendant Plain-English further operates in this capacity through their separate division, Strategic Health Care Marketing[3].

31. Defendant USHealth is an alleged healthcare provider.

32. In Defendant's overzealous attempt to market its services, however, Defendant willfully or knowingly conducted (and continues to conduct) unsolicited and automated telemarketing text messages without the prior express written consent of the Plaintiff and the Class Members who were recipients of such telephone solicitations.

33. Through this conduct, Defendant has violated the TCPA and invaded the privacy of Plaintiff and the members of the Class.

34. At all times relevant, Plaintiff was a citizen of the State of Nevada. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

35. Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39). Upon information and belief, Defendant made numerous unsolicited text messages, including text messages using an automated

---

[1] https://www.plainenglishmedia.com/
[2] https://www.plainenglishmedia.com/plain-english-health-care/
[3] https://strategichcmarketing.com/about/

CLASS ACTION COMPLAINT

system, to Plaintiff and the Class members.

36. At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number of ending in 4337 ("Cell Phone"). Plaintiff is the sole user and/or subscriber of her Cell Phone.

37. Plaintiff's cellular telephone number ending in 4337 has been on the National Do-Not-Call Registry since May 21, 2023.

38. On April 8, 2024, at approximately 9:52 A.M., Plaintiff received an automated text message and a picture message from the phone number (276) 598-5059. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The text included contact information for Kennedy Gonzales, with an email of KGonzalez@Strategichealthcare.com. Plaintiff did not reply.

39. On April 9, 2024, at approximately 6:02 A.M., Plaintiff received another automated text message from the same phone number (276) 598-5059. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff did not reply.

40. The following day, on April 10, 2024, at approximately 6:02 A.M., Plaintiff received another automated text message from the same phone number (276) 598-5059. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff did not reply.

41. Again, on April 11, 2024, at approximately 8:04 A.M., Plaintiff received an automated text message from the same phone number (276) 598-5059. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff did not reply.

42. Two days later, on April 13, 2024, at approximately 8:05 A.M., Plaintiff received an automated text message from the same phone number (276) 598-5059. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff did not reply.

43.     Again, on April 15, 2024, at approximately 10:02 A.M., Plaintiff received an automated text message from the same phone number (276) 598-5059. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff did not reply.

44.     Again, on May 2, 2024, at approximately 7:13 A.M., Plaintiff received an automated text message from the same phone number (276) 598-5059. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff did not reply.

45.     Defendant transmitted or caused to be transmitted, by themselves or through an intermediary or intermediaries, numerous SMS or MMS text messages to the 4337 Number without Plaintiff's prior express written consent.

46.     Plaintiff did not provide Defendant with her cellular telephone number at any point in time, nor did Plaintiff give permission for Defendant to text her cellular telephone number.

47.     Plaintiff did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

48.     Plaintiff did not have a personal relationship with Defendant at any point in time.

49.     Plaintiff did not give Defendant prior express invitation or consent in writing for Defendant to send text messages to Plaintiff's cellular telephone for marketing or solicitation purposes.

50.     Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever Plaintiff receives a text message, the unsolicited text messages that Defendants transmitted to Plaintiff's cellular device were invasive and intruded upon her seclusion.  Plaintiff became distracted and aggravated as a result of receiving Defendant's unsolicited text messages.

51.     The aforementioned unsolicited text messages were impersonal form texts sent to numerous persons *en masse*, and not solely to Plaintiff.

52.     The complained of SMS and/or MMS text messages sent by Defendants to the 4337 Number and to the numbers of the members of the Class defined below constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations.  This is because Defendants sent their messages in order to advertise and market their goods and services, for the purpose of ultimately selling such goods and services to Plaintiff and other Class Members for commercial profit.

53.     The unsolicited text messages Defendants sent to Plaintiffs and similarly situated members of the Class defined below were sent pursuant to a common telemarketing scheme for which Defendants, or any agent or intermediary acting on their behalf, did not obtain prior express consent from Plaintiffs and the Class, while their numbers were registered with the National Do Not Call Registry, and therefore violated 47 U.S.C. § 227 et seq., including 47 C.F.R. § 64.1200(c).

54.     Neither Plaintiff nor any members of the proposed Class provided their "prior express written consent" to Defendants or any affiliate, subsidiary, or agent of Defendants to permit them to transmit text messages to the 4337 Number or to any of the Class Members' telephone numbers.

55.     At all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

56.     Each of the above unsolicited telephonic communications by Defendant and/or its agents violated 47 U.S.C. § 227.

57.     Receiving Defendant's repeated unauthorized text messages drained Plaintiff's phone battery, consumed space on Plaintiff's Cell Phone, and caused Plaintiff additional electric expenses and wear and tear on her phone and battery.

58.     The cumulative effect of unsolicited phone messages like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a

result of the phone's memory being taken up.

59.    Plaintiff was personally affected because Plaintiff was frustrated, distressed, disturbed, and felt harassed that Defendant and/or its agents continued to direct unsolicited and unauthorized text messages to Plaintiff's Cell Phone.

60.    Defendant's telephonic communications forced Plaintiff to be deprived of the privacy and utility of her cellular phone by forcing Plaintiff to ignore Defendant's disruptive text messages, dismiss alerts, and/or silence her Cell Phone as a result of Defendant's incessant unsolicited text messages.

61.    The TCPA was intended to give individuals control over how and where they receive telephonic communications.  When Defendant sent the text messages to Plaintiff without her consent, Defendant failed to address or respect the limitations imposed by the TCPA. In doing so, Defendant invaded Plaintiff's privacy and violated the spirit and intent behind the TCPA.

62.    Defendant's violations caused Plaintiff to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g.*, *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

63.    Through the aforementioned conduct, Defendant repeatedly violated the TCPA, 47 U.S.C. §§ 227, et seq., numerous times.

64.    Defendant's unsolicited phone messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion,

12

trespass, and conversion.

65.    Defendant's phone messages also inconvenienced Plaintiff and caused disruption to Plaintiff's daily life.

66.    Defendant's unsolicited phone messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she spent numerous hours investigating the unwanted phone messages including how they obtained Plaintiff's number and who the Defendant was.

67.    Through the above-alleged conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

68.    In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of herself and the Class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq*.

69.    On behalf of Plaintiff and the Class, Plaintiff seeks an award of statutory damages Plaintiff and each of the Class members for the unlawful calls, and costs and reasonable attorneys' fees and costs.

## **STANDING**

70.    Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### *The "Injury in Fact" Prong*

71.    Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

72.    For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists.  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir.

2012). In this case, Defendant made numerous unsolicited telephone text messages to Plaintiff's cellular telephone despite Plaintiff's registering her telephone number with the National Do Not Call Registry. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

73.     For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiff's privacy and peace by directing unsolicited text messages to Plaintiff's cellular telephone despite Plaintiff's registering her telephone number with the National Do Not Call Registry. Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time to see who was texting, ignoring texts, and reading Defendant's text messages which consumed space on Plaintiff's Cell Phone. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

74.     The second prong required to establish standing at the pleadings phase is that Plaintiff must have suffered an injury in fact that is traceable to Defendants. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

75.     Defendant's text messages are directly and explicitly linked to them. The text messages Defendant sent to Plaintiff indicate they were sent from Defendant. In addition, each text message references some form of health insurance quotes, which is Defendant's line of business. Defendant's text messages are the sole source of Plaintiff's and the Class Members' injuries.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

76.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

77.     In the present case, Plaintiff's Request for Relief includes a request for injunctive relief and statutory damages for each text message made by Defendant to

cellular numbers who did not previously consent to receive text messages whose telephone numbers are registered with the National Do Not Call Registry, as authorized by statute in 47 U.S.C. § 227. The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiff and the putative Class Members.

78.    Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

79.    Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Class (the "Class"), which is defined as follows:

**National DNC Class:**
All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 31 days, (2) who received more than one telephone solicitation (3) made by or on behalf of Defendant, (4) for the purpose of promoting Defendant' goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

80.    Defendant, their employees, and agents are excluded from the Class.

81.    Plaintiff reserves the right to modify or expand the definition of the Class (or add one or more subclasses) as warranted as facts are learned or confirmed after further investigation and discovery.

82.    Plaintiff and all Class Members have been impacted and harmed by the acts of Defendants or their affiliates or subsidiaries Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by sending unsolicited text message/s, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members

previously paid, and invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

83. This Class Action Complaint seeks injunctive relief and monetary damages on behalf of Plaintiff and the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

84. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

85. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

86. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

87. <u>Typicality</u>. Plaintiff is a person who received at least one unsolicited text message from Defendants without providing her "prior express written consent" to be sent such messages from Defendants within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class Members she seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendants' violations or misconduct as alleged herein.

88. <u>Adequacy</u>. As Class representative, Plaintiff has no interests adverse to,

or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of the Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave to amend this Class Action Complaint, amend the Class definition, to add additional Class representatives, or assert additional claims.

89.     Competency of Class Counsel.  Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Plaintiff's counsel is experienced in handling complex class action claims as well as claims involving violations of the Telephone Consumer Protection Act.

90.     Commonality and Predominance.   There are well-defined common questions of fact and law that exist as to all members of the Class defined above and predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from Class Member to Class Member and may be determined without reference to the individual circumstances of any Class Member, include (but are not limited to) the following:

a)     Whether Defendants or affiliates, subsidiaries, or agents of Defendants transmitted advertising or telemarketing text messages to Plaintiff's and Class Members' cellular telephones;

b)     Whether, within the four years prior to the filing of this Complaint, Defendant or its agents placed more than one telephone solicitation to the members of the Class whose telephone numbers were on the National Do Not Call Registry and who had neither an established business relationship nor personal relationship with Defendant;

c)     Whether Defendants or affiliates, subsidiaries, or agents of Defendants can meet their burden to show Defendants obtained

"prior express written consent" (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

d)   Whether Defendants' conduct was knowing and/or willful;

e)   Whether Defendant's conduct violated the TCPA;

f)   Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

g)   Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct; and

h)   Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

91.   <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Even if every member of the Class could afford to pursue individual litigation, the Court system could not.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class wide relief is essential to compel compliance with the TCPA.  The interest of Class Members in

individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the Class Members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class Members can be readily located and notified of this class action through Defendants' records and, if necessary, the records of cellular telephone providers. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

92.     Additionally, the prosecution of separate actions by individual Class Members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class Members to protect their interests.  The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendants.

93.     Moreover, Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. The violations complained of herein are substantially likely to continue without remedy in the future and Defendant will likely continue such illegal conduct an injunction is not entered.

94.     Defendants or any affiliates, subsidiaries, or agents of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

CLASS ACTION COMPLAINT

# COUNT I

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. § 227(C)(5) AND 47 C.F.R. § 64.1200(C)

95.  Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

96.  The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

97.  47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[4]

98.  47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

99.  Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

100.  Plaintiff and members of the Class received more than one marketing text message within a 12-month period, sent by or on behalf of Defendant, for the express

---

[4] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

purpose of marketing Defendant' goods and/or services without their written prior express consent.

101. At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

102. Defendant sent unsolicited and unauthorized text messages to the cellular telephones of Plaintiff and the Class members, cellular telephones which were registered with the National Do-Not-Call Registry, for the purpose of marketing goods and/or services to Plaintiff and the Class.

103. Defendant knew that it did not have prior express written consent to send these text messages, and knew or should have known that it was sending text messages to cellular numbers on the National Do-Not Call Registry in violation of the TCPA.

104. Defendant willfully or knowingly allowed text messages to be sent to Plaintiff's and Class members' cellular telephone numbers on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff and/or Class members yet disregarded such information and placed illegal and unwanted solicitation text messages.

105. Defendant' text messages caused Plaintiff and members of the Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

106. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

107. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period

made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200 and 47 U.S.C. § 227(c).

108. Because Defendant knew or should have known that Plaintiff's and Class Members' cellular telephone numbers were registered on the National Do-Not-Call Registry, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

109. As a result of Defendant' violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

110. Plaintiff and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

111. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief against Defendant:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel;

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

- Statutory damages of $500.00 for Plaintiff and each member the Class for each and every one of Defendant's violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(B);

- Statutory damages of $1,500.00 for Plaintiff and each member the Class for each and every one of Defendant's willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(C);

- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

- Pre-judgment and post-judgment interest on monetary relief; and

- All other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

112. Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues so triable.

Dated: September 23, 2024

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ Gustavo Ponce*
Gustavo Ponce, Esq.
Mona Amini, Esq
*Attorneys for Plaintiff*