UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
BEFORE THE HONORABLE MIRANDA M. DU, DISTRICT JUDGE
---o0o---

ERIN ROBERTSON on behalf     :
of herself and all          :
others similarly            : No. 3:24-cv-429-MMD-CSD
situated,                   :
                            :
          Plaintiff,        : January 7, 2026
                            :
     -vs-                   :
                            : United States District Court
PLAIN-ENGLISH MEDIA, LLC    : 400 S. Virginia Street
d/b/a PLAIN-ENGLISH         : Reno, Nevada  89501
HEALTH CARE, ET AL.,        :
                            :
          Defendants.       :
_____:


**TRANSCRIPT OF MOTION HEARING**
**MOTION TO COMPEL ARBITRATION**


<u>A P P E A R A N C E S</u>:

FOR THE PLAINTIFF:          GUSTAVO PONCE
                            Attorney at Law

FOR THE DEFENDANT:          JEFFREY BACKMAN
                            Attorney at Law


Proceedings recorded by mechanical stenography produced
by computer-aided transcript


Reported by:                KATHRYN M. FRENCH, RPR, CCR
                            NEVADA LICENSE NO. 392
                            CALIFORNIA LICENSE NO. 8536

Reno, Nevada, Wednesday, January 7, 2026, 10:00 a.m.

---OoO---

THE COURT:  Good morning.  Please be seated.

THE CLERK:  This is the date and time set for a motion hearing regarding Amended Motion to Compel Arbitration in case number 3:24-cv-429-MMD-CSD, Erin Robertson versus Plain-English Media, LLC, Doing Business As, Plain-English Health Care, et al.

Counsel appearing by video on behalf of plaintiff, Gustavo Ponce.

Counsel appearing in the courtroom on behalf of defendant, U.S. Health Advisors, LLC, Jeffrey Backman.

THE COURT:  All right.  Good morning, counsel.  Please be seated.

This hearing is set on the Amended Motion to Compel Arbitration, which is ECF number 50.  For the record, I have reviewed both the Response and the Reply.  I just have questions for counsel.  I think I am evaluating the initial question of whether or not there is an enforceable -- well, that there's an agreement to arbitrate that exists between the parties. And so I have some questions for counsel.

I'll start first -- I'll hear from defendant's counsel, since the motion is filed by the defendant.

Mr. Backman.

MR. BACKMAN:  Good morning, Your Honor.

First, thank you for holding a hearing and allowing me to be here in person.  This is a lot of fun, and we don't get to do it too often.  Especially since the Pandemic, a lot of courts are conducting these by Zoom.  So, happy to make the trip and happy to be here. Thank you.

I could address this however you'd like.  If you want me to just answer questions that you may have -- I do have an argument prepared.  I'd rather address any concerns or thoughts that you have.

THE COURT:  I set a hearing, one, it was requested; but, two, because I have questions.  So, I want to make sure I understand.  The information in the two declarations that your client offered, the Lilly and the Taub Declarations, is that, essentially, a user, with plaintiff's phone number,  made submissions on the three sites that serve as a basis for the defendant's argument that a valid arbitration agreement exists, right?  It's a user with that phone number.

MR. BACKMAN:  Correct

THE COURT:  So do you -- does this mean you don't dispute the plaintiff's evidence that the three websites were accessed through an IP address in Nigeria, with an address in Virginia?

MR. BACKMAN:  So I do dispute that, and there's no evidence of that.  They just say it.  The plaintiff, in her declaration, did not identify any information as to her browser history, her IP addresses.  The Court is aware from the argument, and the Johansson case in particular out of the Western District of Washington that Judge Denney talked about at our hearing on the Motion to Stay, that IP addresses are hacked all the time.  They're unreliable.

And so what we have here is an individual, Erin Robertson, who, in the last year, has filed over 20 federal court lawsuits, where she seeks to be a Class representative, for receiving calls in purported violation of the TCPA.  And in nearly all of those cases, the defendants have an opt-in, an online submission, with her telephone number on it, all of which also include this information of Mr. Igbinosa, or whomever, whatever that name is, allegedly from Nigeria, and there are sporadic, sort of, different IP addresses associated.  Even with the IP addresses identified by the declarants here for these

online submissions, some of them are similar.  The front end, the first few numbers are similar.  And some of them are different.  And nobody knows, at the moment, exactly where that IP address may have been scraped from, or whether hackers were used, or anything like that.  And the self-serving declaration that Ms. Robertson submits that simply says I didn't do this and I didn't do that and I wasn't there and I'm not from Nigeria and I didn't visit Virginia, and all of those things, it's not sufficiently credible.  It doesn't rise to the level to create a disputed issue of fact as to whether or not it was her in the face of evidence from the third party lead generator, who identifies the submissions, identifies the web forms, identifies that somebody went on there.  And at every turn in these cases with Ms. Robertson, there are four opt-ins, just in our case alone here, that we're talking about that we found.  And you look at her history in all of these other cases, it's always her telephone number.  And why on earth would some hacker, allegedly in Virginia or Nigeria, ever do that?  Like, what's the point of it for her to receive insurance quotes in this case?

THE COURT:  So in terms of the threshold question, you contend that her declaration making these

self-serving statements that, essentially, she was not the one who accessed the sites, are not enough to create a genuine issue.  So, is the standard governing whether or not she was the user under the FAA, the threshold question that the Court has to determine, is the standard similar to summary judgment?

MR. BACKMAN:  I think it is similar to summary judgment, but I believe our burden is one of preponderance of the evidence.  But, yes, it's a summary judgment standard is what the Court said.

THE COURT:  So given that there -- she's offering her declaration to dispute that she was a user, how can the Court determine that that declaration doesn't create a genuine issue of fact?

MR. BACKMAN:  Sure.  So the Western District --

THE COURT:  I understand it is self-serving and so on, but --

MR. BACKMAN:  Yeah, understood.

So, the Western District of Washington case, in Johansson, that was on summary judgment, and the Court did not credit that plaintiff's self-serving denials, "conclusory self-serving denials," is how the Court phrased it.  And there are other cases within the Ninth Circuit, where courts have said we do not credit

self-serving, conclusory denials, and that that's not sufficient for summary judgment.

However, judge, the end result, if you do credit her statements, is that we have competing declarations and competing evidence, and the FAA has a process for that; and that is a Section 4 trial.  So, we would conduct some discovery.  We would go talk to Ms. Robertson.  The plaintiffs would do some discovery. I'm sure there's some nonparty discovery that would need to be done.  Things of that nature.  And we could come in here and we would have a trial on the issue of whether or not it was Ms. Robertson who made the agreement online.

THE COURT:  So what would you hope to gain in discovery?  Because all -- so, there's an additional inference the Court has to make, not just -- aside from the factual dispute, is that the person -- so there's a phone number, a user with a phone number that belongs to her that accessed these sites.  I don't think that she can dispute that.  But, maybe she does.  Assuming she disputes that, I also have to make a finding that not only she access -- the person with the phone number accessed the site, but she was the person who accessed the site.  Right?  I have to make that additional inference; that she was the person who accessed the

site --

MR. BACKMAN:  Or per --

THE COURT:  -- not just the phone number.

MR. BACKMAN:  Or perhaps someone with her knowledge or under her authority,or at her direction. There's a lot of options there.  And in terms of what we would hope to gain in discovery, I mean, at the moment, you have the owner and operator of the websites testifying under oath as to all of the details relating to the submission. They cannot -- that information, her telephone number cannot get there, absent a person going online, providing all that information, including the telephone number, and hitting the button.  Right?  It's not made up.  That is what the declarant says on behalf of the websites.  And on the other hand, you just have Ms. Robertson saying it wasn't me.  And so what we would hope to gain is information from Ms. Robertson. We would pull her browsing history.  We would find out her connections, if any, to this person -- or maybe not a person -- in Nigeria or Virginia.  We would look at her IP addresses.  We would analyze her other cases and her other opt-ins.  And we would come in here and show you, judge, hopefully, that she had no credibility. That this is a game.  That this is a setup by her over the last year through something.  We don't know.  I

can't stand here and tell you I know how, whatever we believe this operation to be, works.  But, it seems highly suspicious.  And it's highly unlikely, from our perspective, that some random person, from somewhere in the world -- maybe Nigeria, maybe Virginia, maybe Reno.  Who knows? -- is consistently going online, asking for insurance quotes, asking for whatever the other subject matters are in the other cases, and providing all of this information that ties back to somebody named Igbinosa Ob -- I can't pronounce it.  And all of them, miraculously, all of them have her telephone number.  And as far as we know, she's done nothing about it, other than find lawyers and file Class actions, with her as the representative, and then settle all of them, with the exception of just a few.  And so we think that there's, perhaps, some foul play there.  We don't know.  But that's what we would hope discovery would reveal, and we could come in here and show you that.

THE COURT:  Well, you indicated IP addresses are unreliable, but I think there are Apps that generate phone numbers that also can duplicate an existing phone number.  Would you agree with that?

So, it's possible that somebody duplicated a phone number that turned out to be hers.

MR. BACKMAN:  It's possible, but the

response to that would be to what end?  So why is some random person doing this?  What are they getting from it?  Nothing is coming to them.  All the phone calls go to Ms. Robertson's telephone number.  Is it funny?  Is it a sport?  But, what's the point of it?  The only one getting anything out of this is Ms. Robertson, and the lawyers that might be able to settle the cases for her.

THE COURT:  That may be, but I don't know that that's an issue -- or inferences I can make, and conclusions I can draw just from the motion.

MR. BACKMAN:  Fair.  And, again, so if you credit her denials and you think that there is an issue of fact, then we should move on and we should have some discovery and conduct a trial as to the making of the agreement.

THE COURT:  But do I have any other information, not to at least take her statements in her declaration at face value at this point, at this posture?

MR. BACKMAN:  Well, you have the credibility concerns that I've raised, that call into question everything that she says, from our perspective.  And we should be afforded the opportunity to conduct that discovery.  And as the Court knows, we can't do that

now with our motion pending.  You would have to order the trial and order the discovery to be conducted first.

THE COURT:  All right.  Thank you.

Anything further.

MR. BACKMAN:  Is that the only concern of the Court?  Did you want to talk about the other aspects of the motions or anything like that?

THE COURT:  I think that -- well, I don't want to get too far ahead.  If I make a finding that -- assuming I deny the motion, or I hold it in abeyance, and have a proceeding on the issue of whether she was the user, I think the other issues are rather straightforward.

MR. BACKMAN:  Okay.

THE COURT:  I would compel arbitration.

MR. BACKMAN:  Okay.

Thank you, Your Honor.

THE COURT:  All right.  Let me hear from plaintiff's counsel.

MR. PONCE:  Good morning, Your Honor.

Your Honor, I mean, I want to take the position, Your Honor, if there's questions that you would like me to answer head-on, I think that it's pretty straightforward.  Here, our client, she's

adamant it wasn't her.  I understand that they're saying, well, who would benefit from this?  But, my client had insurance.  There is no need for my client to go get insurance.  And there is no need for my client to go get bombarded with phone calls, right?  I don't think that is a benefit to my client either, to get bombarded with calls.

The fact that other litigation, that she filed other lawsuits, has no bearing on a Motion to Compel Arbitration.  Also, is she's a victim of these -- someone putting in her phone number, and she's being contacted, I don't see why there's a reason why she shouldn't speak up and have her rights heard before the Court.  It almost seems like defendant is saying, hey, the law could violated, but you only get one shot or two shots at the law.  Other than that, you be quiet and sit down.  That's not how things work here.  And I just don't -- you know, the IP address, Your Honor.  Sure, you know, it deems to Nigeria.  Our client is not in Nigeria.  Our client has never left between Reno and, I believe, Northern California.  The address on the -- I guess the address that were provided by defendant's side on the website, those addresses deem to an address that's not even a real address.  So, to begin with, why would there even be an address that's not a real address

to begin with?  And even the names, the names in the e-mails don't correlate with my client.  It points straight forward that it was someone else with my client's phone number, only my client's phone number, inputting it.  You usually run into the issue where a person's name, address, e-mail, birthday, et cetera, et cetera, all lines up.  Here, the only thing that lines up, Your Honor, is the phone number.

THE COURT:  So do you agree that if I find that she was the person who either clicked on the buttons consenting to the terms of service, then I have to agree that the dispute with defendant is subject to arbitration?

MR. PONCE:  Your Honor -- sorry, Your Honor. It cut off a little bit.  I believe you said if I agree that it was Ms. Robertson who clicked on the terms -- or the terms and conditions, that she's bound by arbitration?

Was that the question, Your Honor?

THE COURT:  Yes.

MR. PONCE:  I do not believe so, Your Honor. Because even if she was the one that -- in arguendo here -- even if she was the one that clicked it, the terms and conditions, or the arbitration provision, we don't believe it applies to defendant here.  We

do see that there is a, a link, or a list of companies to contact people, and there is a very strong distinguishment there.  It's bullet point "I" and bullet point -- sorry.  Bullet point 1 and bullet point 2 there that had these websites, Excel and -- I forget the other one, Your Honor -- Safe -- Safe something here -- had they wanted defendant here to be part of the arbitration clause, they would have included them in the terms and conditions.  And in the terms and conditions it specifically says "you" and "we," and defines "we" as those specific websites. Nowhere within there does it say, uh, list of companies or defendant's name.

THE COURT:  I have a question about the Declaration.  In paragraph 31 of plaintiff's Declaration, she states:  "I did not authorize anyone to enter my information in neither of the websites."

The double negative suggests that she may have.  Was that a typo?

MR. PONCE:  Yeah, I think that should have been "either of the websites," not "neither of the websites."

THE COURT:  Do you want to respond to the request that if the Court finds there's a factual dispute, that the Court should allow for limited

discovery and conduct a hearing?

MR. PONCE:  Your Honor, you know, first off, right, we don't believe that our client consented.  We don't believe that our client entered her information into this website; therefore, didn't consent.  Second, we don't believe that the arbitration clause applies to defendant.  But if this court was inclined to hold this motion in abeyance, we wouldn't, we wouldn't mind having an Article 4 trial, as we had, you know, fairly requested it in our opposition as well.

THE COURT:  I'm sorry.  I didn't hear the last part.

MR. PONCE:  Yeah, we wouldn't oppose having an Article 4 mini trial here, since it was something that we did put in our opposition; that we would be inclined to go do discovery on that issue.

THE COURT:  All right.  Give me one moment.  I'm looking for something in my notes.

I'm trying to organize my notes in terms of the second issue; and that is, whether defendant is a party or a beneficiary.  There are two sites under -- with a list of companies that would cover defendant.  I think it's the second and third -- first and second website?  Is that right?

MR. BACKMAN:  Correct.

Are you asking me, Your Honor?

THE COURT:  Yes.

MR. BACKMAN:  Yes.  Correct.  They both include list of businesses, but the third one does as well.  I do acknowledge the terms of service are little differently worded, but, certainly, Exhibits B and D to the Lilly Declaration include the list of businesses.

THE COURT:  That's what I was looking for because the sites are -- yes.  List of companies for the first and second sites include the defendant.  The defendant was listed as a third party partner under the terms of use for the third site.

Is that right?

MR. BACKMAN:  Correct, Your Honor.

THE COURT:  All right.

So on that -- so, here's my ruling.  In terms of -- I haven't reached a decision on the threshold question, whether or not defendant has demonstrated that plaintiff was the user who made the submission that led to her clicking on the link that results in her agreeing to the arbitration provision.  So, that's a threshold question.  If I reach -- once I resolve that -- and the reason I decided I'm going to do -- hold an Article 4 proceeding is because on

the other issues, I agree with the defendant that defendant -- for the first and second site, the list of companies include defendant, and defendant was listed as a third party partner under the terms of use for the third site.

The other issues, to the extent there's an objection about whether the -- as to enforceability and the scope of the provision, of the arbitration provision, that's an issue for the arbitrator to resolve.

So, that's my ruling on the issues raised in the motion.  I'm not going to issue a written order.  That's an oral ruling on that motion.

But returning back to the initial question, I'm going to find that there is enough of a factual dispute, based on plaintiff's declaration, that, at this point, based on this record, I cannot find the defendant has met its burden to demonstrate, by preponderance of the evidence, that there is -- that she is a party to the arbitration provision, and so I grant the request, the alternative request to hold a -- to allow for limited discovery.  So, I want to hear about how much time you need.  And then I will schedule a trial to resolve that issue.

So, how much time do you need for the

limited discovery?

MR. BACKMAN:  Uh --

MR. PONCE:  Your Honor, maybe it's easier -- and I don't know if you want an answer today -- maybe it's easier for us to meet and confer with each side, with the other side, and then file a status report with you within a week, see if there's, you know -- I don't know exactly how long it's going to take, but I think -- I foresee somewhere above five months.

MR. BACKMAN:  And I'm fine with that approach.  Actually, Mr. Ponce and my office just did this and submitted a status report for a schedule leading into a Section 4 trial in another case yesterday.  And for that one we're contemplating five months, I think, if I remember correctly.

MR. PONCE:  Right.

MR. BACKMAN:  So, perhaps something similar.  It does involve third party discovery.  We will try to track down -- I'm sure Mr. Ponce will as well -- but people will try to track down hosts or ISPs of the internet protocol addresses, and carriers, and things of that nature.  And of course, at least, a deposition of Ms. Robertson.  So, yeah.

THE COURT:  Do you agree with the suggestion that the parties meet and confer and submit a status

report?

MR. BACKMAN:  Yeah, I think that that's fine.

THE COURT:  So the status report then is due within seven days.  And any discovery dispute issues, of course, will be referred to Judge Denney in this case.

I realize that the request is for the Court to hold the motion in abeyance, but I don't want that motion to be on my Civil Justice Reform Act Report, so I'm going to deny the Motion to Compel Arbitration, without prejudice to the Court revisiting the issue for which I will hold an Article 4 proceeding.  So, it's -- I have to either grant or deny, otherwise the motion stays on my report, and I try to avoid having any motions on my report.

So, as far as the ruling is concerned, it's denied without prejudice to the Court resolving the threshold issue.  It's granted as to the other issues raised in the motion.

MR. BACKMAN:  Okay.  Yeah.  In my head, I was thinking of one of those orders that say denied in part, granted in part.  I'm ordering a Section 4 trial. But, of course, it's your docket.  So, I get it.

THE COURT:  So, essentially, that's the

ruling.

MR. BACKMAN:  Okay.

THE COURT:  I deny the motion with respect to the first, the threshold issue of whether or not plaintiff was the user, pending an Article 4 trial.  I grant with respect to the other arguments raised in the motion.

MR. BACKMAN:  And it will just be a ruling in the transcript, correct, on the record?  No written order?

THE COURT:  I'm sorry?

MR. BACKMAN:  No written order is going to issue, correct?

THE COURT:  Correct.

MR. BACKMAN:  Okay.  Thank you very much, Your Honor.

THE COURT:  Thank you.  I'll conclude the hearing then.

MR. PONCE:  Your Honor, if I may, real quick, on the status report, do you -- would you like just a timeframe of how we -- how long we would need; or, is there anything else you would like for us to include in the status report?

THE COURT:  A timeframe of how much time you would need, and the type of discovery you would be

conducting; depositions --

MR. PONCE:  Excellent, Your Honor.

THE COURT:  -- interrogatories, request for production.  I don't need to know about third party subpoenas.

MR. PONCE:  Okay.

MR. BACKMAN:  Thanks so much, Your Honor.

And, again, thank you for --

THE COURT:  And I don't know that I would need any kind of briefing before the trial, but perhaps counsel can tell me if you think some kind of pretrial briefing is needed.

MR. BACKMAN:  So we have, in some cases -- I'm not sure if the one yesterday contemplated it -- but we have, in some cases, on this issue, built-in, uh, call it a summary judgment, a dispositive motion-type deadline, if the evidence reveals that it's so obvious one way or the other, and there are no disputed issues of fact, perhaps it could be resolved through subsequent motion practice.

THE COURT:  Well, let's do this.  Why don't you build in a proposal for filing the final status report with the Court, indicating whether you believe the issue may resolve via some kind of motion, or whether a mini trial is required.

MR. BACKMAN:  Okay.

THE COURT:  All right.

Thank you.

MR. BACKMAN:  Thank you so much.

THE COURT:  Thank you.

MR. PONCE:  Thank you, Your Honor.

(Court Adjourned.)

-o0o-

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

\s\ Kathryn M. French                January 13, 2026
_____        _____

KATHRYN M. FRENCH, RPR, CCR                    DATE
Official Reporter